F. C. CONNELLY, as Receiver of Midwest Wholesale Company, a Co-partnership consisting of E. H. Spreen and Florence Spreen, Plaintiff in Error,

v.

Charles R. JOHNSON and James D. Wilson, Co-partners, d/b/a Wilson Electric Company, Defendants in Error.

No. 40109.

Supreme Court of Oklahoma.

Sept. 24, 1963.

Hobart Brown, Tulsa, for plaintiff in error.

Harris & Graham, Bartlesville, for defendants in error.

WILLIAMS, Justice.

Plaintiff in error brought the action from which this appeal arises to recover upon an open account the sum of $2,702.09 from defendants in error, Charles R. Johnson and James D. Wilson, alleged co-partners, d/b/a Wilson Electric Company. The account was incurred by Johnson.

Connelly, receiver of Midwest Wholesale Company, hereinafter referred to as Midwest, as plaintiff in such action, alleged the existence of the defendant partnership, and that electrical supplies were sold and delivered by Midwest to Wilson Electric Company for which there is a balance due Midwest in the amount above specified. Defendants answered that Midwest extended credit to Johnson and that it did so without relying upon any express or implied agreement of Wilson to be bound by obligations incurred by Johnson. Reference to the parties herein is as they appeared in the trial court, or by name.

At the trial the following facts were developed. Starting in 1955, an electrical contractor was required to pass an examination given by the Tulsa City-County Electrical Examiners and Appeal Board before he could obtain a license from the City of Tulsa. Johnson failed the examination and was not able to obtain such a license. E. H. Spreen, one of the owners of Midwest, suggested that Johnson contact Wilson; that Wilson had a license but was moving to Bartlesville. Johnson saw Wilson, whereupon, at the requirement of the City Attorney's office of the City of Tulsa, they entered into a written agreement styled "Partnership Agreement." Such office prepared the purported partnership agreement. Such agreement was filed with the "City and County Inspection Board for the Electrical Department." In September, 1960, Johnson, in his individual capacity, filed a petition in bankruptcy.

After the plaintiff had submitted his evidence, Wilson Electric Company and James D. Wilson demurred to the evidence and moved for a directed verdict. The trial court sustained the demurrer and directed the jury to return a verdict for such defendants. Plaintiff appeals from an order overruling his motion for a new trial following verdict for defendants and judgment based thereon.

For reversal plaintiff advances one proposition. It is that:

"The trial court erred in sustaining defendants' demurrer to the evidence and in directing a verdict for the defendants."

Plaintiff contends that he "proved a prima facie case, setting out the unpaid account, the intangible tax paid on the account, the partnership agreement between the defendants, the signing of which was admitted by both defendants."

In several of our decisions, we have announced the rule that:

"In actions of legal cognizance a demurrer to plaintiff's evidence or motion for directed verdict should be overruled unless there is an entire absence of proof tending to show a right to recover; and, in passing upon a demurrer to the evidence or a motion for a directed verdict, the trial court must consider true all of the evidence favorable to the party against whom the demurrer or motion is directed together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the demurrant or movant." Colorado Interstate Gas Co., v. Wheeler, Okl., 344 P.2d 1055.

As tested by this rule of law, the record reflects sufficient evidence to have justified the trial court in overruling the demurrer to plaintiff's evidence and motion for directed verdict.

Mr. Spreen testified on cross-examination as follows:

"A. I checked the inspection office. They told me that there was a partnership between Johnson and Don Wilson. And they, also, referred me to the bonding company that told me the same thing.

\* \* \* \* \* \*

"Q. What did they say with relation to a partnership agreement?

"A. The City Inspector's office?

"Q. Yes.

"A. They said it definitely was a partnership.

\* \* \* \* \* \*

"Q. Were you relying on this or were you relying on Mr. Johnson's statement?

"A. We have to set up credit some way on our accounts and the only way we can set up credit is getting information from the people we are able to get it from, from the bank, or from the inspection people. And the only place we could get it in this case was from the Tulsa County Inspection Bureau. There was no letter written by Don Wilson that he was not responsible for anything.

"Q. Well now, let me ask you this question, Mr Spreen: Were you relying on what Mr. Johnson told you or were you relying on this statement of the Inspector?

"A. We were relying on what Mr. Johnson told us plus what other information we could gather to set up our account.

"Q. Were you relying on the statement told you over telephone?

"A. We rely—we pieced the information together just like anyone else would do and try to set up an account that way.

"Q. Did you place any reliance on the statement given to you over the phone at all?

"A. On what the City Inspector told me?

"Q. Yes.

"A. Why, yes, I—

"Q. Was the City Inspector authorized to act for or on behalf of either Mr. Johnson or Mr. Wilson in this matter?

"A. No. No, but they were set up by law and I thought if they showed the account as a partnership that I was pretty safe in setting it up the same way.

"Q. But the fact the City Inspector told you that there was an agreement between Mr. Johnson and Mr. Wilson does not mean that Mr. Johnson or Mr. Wilson told you that, does it? I mean you were not relying on either one of those two men as far as the telephone conversation?

"A. I would have if I had a letter from Don Wilson saying he was not a partner I would have relied on that. That's right."

In a letter to the "Tulsa City-County Electrical Examiners and Appeal Board" Wilson stated:

"* * * This letter is in supplement to other information that has been furnished to you. In reference to my partnership agreement with Mr. Charles R. Johnson. * * *

"Mr. Charles R. Johnson is authorized to act and to transact business as the Wilson Electric Company in the City of Tulsa and Tulsa County * *."

Mr. Johnson testified that:

"Q. What purports to be a check. Is that a check you received from him (a customer)?

"A. It could be, yes, sir.

"Q. Will you look at the reverse side and see if that's your endorsement?

"A. That is, yes, sir.

"Q. Did you endorse that 'Wilson Electric Company by Charles R. Johnson?'

"A. Yes, sir.

"Q. Is that the way your invoices appeared?

"A. That's the way of all the invoices.

"Q. Wilson Electric Company by Charles R. Johnson?

"A. By Charles R. Johnson.

"Q. Is that the only business you operated?

"A. That is the only business I operated."

The following language from 68 C.J.S., Partnership, §§ 32, 33 and 35, pp. 457 and 458, is deemed pertinent here:

"Any act, representation, or conduct on the part of a person, reasonably calculated to induce the belief that he is a partner, constitutes a holding out, with respect to whether a partnership will be held to exist as to third persons. Thus, allowing one's name to be used in connection with the business of a firm will be sufficient to estop such person from denying his connection therewith. * * *

"* * * Where one learns that he is held out as a partner by the use of his name as that of a member of the firm, to escape liability he must prohibit such use, and he is bound to take such steps as an ordinarily prudent person would take in the circumstances to notify the public as well as individuals to whom he knows he has been held out. * * *

"When persons have held themselves out to the public as partners, others are entitled to act on the presumption that this relationship continues, until notice is given of its discontinuance. * * *"

In the case of Moning Dry Goods Co. v. Wiseman, et al., 60 Okl. 94, 159 P. 259, the facts were that Moning sued Wiseman and Jordan on an account alleging that they were partners and that Wiseman had purchased goods for and on behalf of the partnership. Jordan demurred to plaintiff's evidence. The trial court sustained his demurrer. This court reversed the trial court and ordered a new trial as between plaintiff and Jordan. In paragraphs 1, 4, 5 and 6, respectively, of the syllabus, this court said:

"The plaintiff, having put in evidence a written agreement of partnership between the defendants, made out a prima facie case of partnership against them. * * *

"The questions of partnership, when it began, when it ceased, if it did cease,

whether or not it was in existence at the time these goods were purchased, whether the goods were purchased by the partnership, whether or not the partnership is liable for the payment of same, whether, if the partnership had ceased to exist before the purchase of the goods, the plaintiff had knowledge thereof under sections 4462 and 4463, Rev. Laws Okl. 1910, were all questions of fact for the jury to find and determine in the light of all the facts and circumstances in evidence before them touching such matters and things.

"When the question whether a partnership exists is a matter of doubt, to be decided by inferences to be drawn from all the evidence, it is one of fact for the jury; and the court should not nonsuit or direct the jury to find a verdict for the plaintiff or defendant.

"Where it is shown that a partnership at one time existed, it will be presumed to continue, in the absence of testimony to the contrary. A presumption of partnership arises from the use of a name such as is commonly employed when a partnership exists."

In the case of Price v. Smith, Okl., 373 P.2d 242, this Court stated:

"* * * If under any view of the evidence so considered there is any competent evidence to show a right to recover, the cause should be submitted to a jury. Towery v. Guffey, Okl., 358 P.2d 812."

■ We find that in the trial below from which this appeal came there was proof tending to show plaintiff's right to recover judgment. Therefore, the trial court erred in sustaining a demurrer to plaintiff's evidence and directing a verdict for the defendants.

In connection with the determination that it was error to sustain demurrer to plaintiff's evidence, it is noted that defendant Wilson, for his counter proposition, urges that "The trial court was correct in sustaining the defendants' motions insofar as the defendant, James D. Wilson, was concerned."

Defendant Wilson, in argument, refers to the partnership agreement relied upon by plaintiff, a provision of which was to the effect that Johnson would procure all materials and employ and pay all labor and other expenses on his own credit and hold Wilson harmless and indemnify Wilson from any and all liability, costs and expense of whatever nature.

Defendant Wilson further argues that he received no benefits as a partner of Johnson and that Midwest could have learned of the above provision by reading the partnership agreement on file in the "inspection office."

■ The answer to these arguments is that for the purposes of defendant Wilson's demurrer to the evidence, all matters in evidence in anywise favorable to him should have been considered as withdrawn. See Colorado Interstate Gas Co. v. Wheeler, supra. Moreover, we are of the opinion that our discussion of the propositions of the plaintiff in error necessarily negatives the argument of defendant Wilson that the trial court was correct in overruling defendants' motions.

■ Defendants in error in their brief state that the four notes signed by Johnson were assigned by Midwest to a Chicago bank for which Midwest received consideration; that such notes have not been reassigned to Midwest; that the bank, rather than Midwest, is the real party in interest. Spreen had testified such notes were merely hypothecated to the bank. For the purposes of the demurrer, such evidence of defendants should not have been considered by the trial court but should have been regarded as withdrawn.

Reversed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JACKSON, IRWIN and BERRY, JJ., concur

JOHNSON, J., concurs in result.